This matter, Thompson v. Austin. This case was tried before Judge Kozik in the Middle District and a jury. The jury returned a verdict in favor of the defendant. We have alleged that the court erred in several respects and I will enumerate them. One that the court erred in failing to charge the jury on a negligence per se charge. I have to stop you there because that's one issue that I had some interest in. The evidentiary rulings are subject to abusive discretion standards. They're very, very difficult, but the jury instruction issue, maybe you could focus on that first. I certainly will, Your Honor. What was wrong about the instruction and how did that mislead the jury? Your Honor, at the charging conference and even before the start of the trial, we had submitted points for charge requesting a charge on negligence per se. Plaintiff had submitted proof through witnesses and through the physical damages to the vehicles that the defendant moved from the left lane into the right lane in violation of the Pennsylvania Code. You cannot make that move unless you can ascertain that it can be done in safety. All right. He made a change of lane and he was issued a summons by a state trooper and he apparently pled guilty and paid it. That's correct, Your Honor. Now that's what you consider negligence per se. No, actually not the fact that he paid the fine. It was actually the actual action of moving from the left lane to the right lane and causing the accident, causing the plaintiff's injuries. Wait, wait. Isn't the negligence per se argument that you've got is mainly based on the assertion that he pled to the traffic offense and therefore nobody has to look at it further because that all by itself establishes negligence? Or I misunderstood you. No, well that's all part of it, yes. The traffic citation was issued to him, but it was issued after the events of the accident. Well, I had it the same way as Judge Jordan. I thought that it was the violation itself and his plea of guilty and paying a fine that constitutes a negligence per se. Well, Your Honor. Let me ask you this. What difference does it make that he got the ticket in the mail 15, 30 days later as opposed to getting it on the scene in determining whether this is a negligence per se or not? Well, because we don't always have a citation by the police department in a negligence per se case. I mean, the trial court can charge in a negligence per se case where there is sufficient evidence to prove that the defendant violated the motor vehicle code. So in this case, there was the added determination that he pled guilty to the traffic citation on section 3309 of the vehicle code. But he gave reasons for that. Justified or not, whether you accept them or not, he gave an explanation. But where in the Pennsylvania law, this is a case tried on state law with diversity, is a conviction by sending in your money on a fine automatically an adjudication on the merits? Where is it that that is automatically considered to be the culpability standard that you're asking this judge to accept? If this case was tried in state court, then the fact that he pled to the traffic ticket would not be admissible. It's admissible under the federal rules of evidence. But under a balance analysis? Mm-hmm. Now, where is it with his proffered explanations that, and the fact that this particular citation was a little off from what he is accused by your client of doing, where is that, the fait accompli, that all of a sudden the negligence per se instruction has to be given by the trial court? Well, Your Honors, it was based on the testimony that was produced at trial, testimony of the defendant's driver trainer that was present in the tractor trailer at the time of the accident. It sounds like a discretionary decision then, rather than an error of law. Well, Your Honor, if you look at the case of Jenkins v. Wolf, Pennsylvania Superior Court, which stated that if the plaintiff gave evidence, in that case the plaintiff testified that she was in a crosswalk and that it was a violation of state law for the defendant not to yield to the right of way of a pedestrian in a crosswalk. And the court stated that if, in that circumstance, the plaintiff submitted evidence that she was in the crosswalk, the jury was entitled to be instructed, as a matter of law, that if you find that the plaintiff was in the crosswalk, then you must find the defendant was negligent per se. Was this a legal error, or are you saying that the district court abused its discretion in failing to instruct the jury on a negligence per se charge? I'm saying that it's a legal error, that he should have charged on negligence per se. The proof at the time, the proof that was submitted was that the defendant changed lanes, that the plaintiff's car was in the right lane, and that there was an accident. That was, help me out with the record here. Sure. I thought that the proof that was submitted was conflicting. That there was no clear, this wasn't everybody acknowledged somebody was in a crosswalk kind of thing. There was a dispute about what happened here, and that your argument below was, but he paid the fine, and that seals the deal, because that's an admission, and he's bound by the admission, and that means negligence per se. Now, that's how I thought the record went. Am I incorrect about that? No, that's correct, Your Honor, but again... that Pennsylvania law, your logic required that Pennsylvania law view that payment of the fine as a binding legal admission that then sets up a basis for negligence per se argument. Judge, if we go back to the Jenkins versus Wolfe case, in that case, there was, the defendant did not agree that the plaintiff was in the crosswalk, and the court found the superior court found that as long as the plaintiff submitted evidence that she was in the crosswalk, the charge was appropriate. In this case, our evidence was that the plaintiff was right in the lane, and that the defendant should not have made the change into the lane, because he couldn't do so safely. You're arguing the facts that are presented to the jury, but the point is, as Judge Jordan has just said, isn't a plea of guilty to a negligence offense enough to go to the jury as a negligence per se? You pled guilty to an unsafe change of lanes. I'm asking you if that's your argument. I thought it was. The way I read the brief, I thought that that's what you were saying, and the judge was, incorrectly instructed the jury that the defendant justified the offense, or presented evidence that the offense was excused, or should be excused. My argument was twofold, that the facts presented were such that the negligence per se should have been charged, also that the defendant pled guilty to the offense. So my position was twofold. Let me go to the first part of your answer, because I understand the two parts. Wasn't there also evidence presented in this trial that the judge had to consider that it was possible, this is one of the rather elusive defenses, that your client was changing lanes, trying to pass the truck from the right lane to the left? There was no testimony or evidence submitted on that point, Your Honor. That's not part of the record in the judge's post-trial motions opinion, that there's conflicting evidence there? Well, he said there was conflicting evidence, but the testimony was, and a review of the record will show, that the plaintiff testified that she remained in her lane at all times. Well, we're not asking about what the plaintiff said. We're talking about the whole state of the record. And didn't Mr. Austin make the statement to the effect that I was in the lane, and then I felt the bump, that she came and hit me. I didn't go hit her. No, the defendant testified that he was in his lane and that she was in the air perpendicular to his vehicle. He didn't say that she hit him. Okay. He said they collided. They collided, okay, that he was in his lane, not moving around improperly, and her car hit his car. So if that's evidence in the record, then we're not in a circumstance, are we, where everybody's agreeing that she was just in her lane and all of a sudden got hit, right? I mean, that's not the state of the record. Well, unfortunately, the defendant testified that she was, that there was, first he testified that there was an impact, but he doesn't say where, and then he said on cross-examination there was no impact between his vehicle and her vehicle. There were, there was testimony from the driver trainer that was in the vehicle that the defendant driver said, I hit her when I was changing lanes. There was an eyewitness who saw the defendant driver change lanes and then the car come and spin around through the interstate. We understand that there's evidence that you like. There's no question about that. We get that. But there's also contradictory evidence, and I don't hear you disagreeing that there's some contradictory evidence, right? I'm saying that the defendant didn't, that's what he testified to, Your Honor, despite the presence of four other witnesses. And under Jenkins v. Wolfe, we were entitled to a negligence per se charge, and under the fact that he pled guilty, we were entitled to that charge. I think I've got it all wrong. You get a negligence per se charge because the evidence was conflicting or because the evidence should be viewed in your favor? No, Your Honor, because I presented testimony, and the way that the court said in Jenkins v. Wolfe is that the jury should have been instructed that if they believed that the plaintiff was in the crosswalk, then the defendant was negligent per se. Did you write the brief in this case? I did, Your Honor. Okay. See, the way I look at this case is you should have gotten a negligence per se charge because Mr. Austin pled guilty, admitted to an unsafe change of lane, and paid a fine. Then I understand your argument to be that the court instructed that he has presented evidence as to justification and excuse. Then I understand you to say that that could not possibly be because all he says is I paid the fine because I didn't have the wherewithal or the resources to pay the fine. I understand that to be your argument. Then I understand you to say because of the jury instruction that the judge gave, that had a capacity to mislead the jury because there is no such justification or excuse that I paid the fine because I couldn't. Justifications have to do with conduct at the scene. I understood that to be your argument. Now, where am I wrong? No, you're correct. Oh. Well, see, I can't understand what difference it makes whether there's conflicting evidence at the scene or not. That's for the jury to resolve. I thought your focus was as to the incorrectness of the jury instruction. Well, that is the focus of the argument. I mean, the jury was so confused by the charge that it led to a defense verdict. The law is that I should have received the negligence per se charge. Can I ask one more question? I know I'm interrupting, but there's a line of cases in Pennsylvania law that neither side cited, and I want to read to you from one of those cases, Hurt v. Sterone. This is a quote from a later Supreme Court of Pennsylvania case, Foligno v. Young, 568A2-171, and it's quoting from the Hurt case, and it says, we recognize a valid existing distinction in cases involving the record conviction of relatively minor matters such as traffic violations, especially in traffic violations, expediency and convenience rather than guilt often control the defendant's trial technique. In such cases, it is not obvious that the defendant has taken advantage of his day in court, and it would be unreasonable and unrealistic to say he waived that right as to a matter, civil liability, which was probably not within contemplation at the time of the conviction, close quote. Now, does the Hurt case and the Foligno case that applies it, and I understand it's applied regularly in Pennsylvania courts, should we understand that to mean that the payment of a traffic fine doesn't amount to a concession of guilt that can be applied against somebody and be the foundation for negligence per se by itself? Leaving aside your argument that, wait, there was evidence, and I should have gotten it because of the record evidence, looking at your argument that, wait, he pled guilty, and that's the basis of negligence per se, doesn't the Hurt case and the Foligno case tell us that's just not so? Well, I mean, that's what the state law is in Pennsylvania. You can't admit that, but in federal court, we can. Well, that's an evidentiary point. I'm talking about the substantive law. The substantive law, which underlies the evidentiary ruling, is it's not a concession that will bind somebody in civil court, I thought, if I'm reading this right. Am I wrong in reading it that way? Well, as I brought up to the trial court, Your Honor, this was a case that involved serious injury. The woman was taken away in an ambulance, and that later on the defendant pled guilty. I mean, he understood that he was in an accident where he had been fired. There had been serious injuries. So you think the seriousness of the injury is a distinguishing factor? Well, yes, it wasn't a minor traffic accident. It was a serious accident. I think the point is if I go through a stop sign in Las Vegas, Nevada, and strike another vehicle, and the day after I come back to New Jersey where I live, the likelihood of my going to Nevada to contest that ticket is very small, and I'll pay $100. Isn't that the same principle? It's economically more feasible to pay the penalty than to contest it. And that's why it shouldn't be used as evidence of wrongdoing? Well, I would say that it depends on the circumstances. If you're claiming that you weren't involved for the accident and that somebody was very badly hurt or killed, then I don't think that you would take it as lightly as if you went through a stop sign and no one was hurt. Okay. Ms. Winley, we have given you quite a bit of time. You've got five minutes on rebuttal, so we'll get you back. Thank you, Your Honor. Mr. Stewart. Good morning. Good morning. Gary Stewart for the appellees, Scott Austin and Warner Enterprises. Your Honor, if I might comment on what you were just talking about, I think one thing we seem to be overlooking is the fact that Scott Austin consistently denied moving into the right lane. So it's hard to have an excuse about moving into the right lane when he denied he ever moved into the right lane until after he saw the car. Why is it any more what your client testified to than it was what the plaintiff testified to? It's not just what he says. Wasn't there a witness right behind him, another truck driver, that said he saw his blinkers and saw him start to move? Well, Scott Austin admitted he had his blinkers on and pursuant to Pennsylvania law knew he had to move back into the right lane and for about three miles drove along trying to move over with Martin Turcotte directly behind him. Mr. Turcotte says at some point Mr. Austin's tractor trailer does start to move into the right lane, and Mr. Austin admits that, but he says he moved when Ms. Thompson's vehicle came across in front of him. Mr. Turcotte, and the record's clear, says, I couldn't see the little car Mrs. Thompson was driving because it was up in front of him, and that's why he also commented that it would be speculation for him to say what happened. He waited three miles to move back into the right lane. The record is clear, two to three minutes. Both parties said they were alongside of each other for about three minutes, and at 55 miles an hour, that's about six miles. Oh, that's more like 80 miles an hour. Let me ask, you said a minute ago it's pretty hard to have an excuse, if I just heard you right. So my question to you is, then why is your argument below and here excuse? I mean, I thought the argument wasn't, hey, I should be excused for doing something wrong. It's that I didn't do anything wrong. Well, that's what he said. Then what does the argument of excuse have to do with what happened here? I guess this goes to Judge Fuentes' question. How does your excuse that I'd rather pay the fine than fight it have any bearing on what happened at the event? Isn't legal excuse a defense to something about what happened at the time, not your legal thinking later? No, it goes back to whether or not there should be a per se instruction and whether the paying of the fine is an automatic admission of guilt. If the person says, I never did it, but I paid the fine for the reasons that were suggested by Judge Fuentes, that's the reason why he paid the fine, because he couldn't get back. Right, that's a reason why he didn't pay a fine. It's not a legal excuse for an illegal lane change, right? That's assuming there was an illegal lane change. He says, I never did one. Maybe we're talking in a circle here. And I'm not understanding, as a matter of law, your assertion that a decision weeks, maybe months after the fact, constitutes a legal excuse for behavior at the scene. The defense of excuse is, I couldn't perform as the law requires. At the time, the law required me to perform. And your argument isn't that he failed to perform. It's that he did what he was supposed to do. So it has nothing to do with excuse, does it? Exactly right. Then how can the jury instruction be right? If that's exactly right, how could the judge's jury instruction about excuse be correct? I think the jury instruction, it goes to, if you're going to allow the fact that he paid the fine, then the person should be allowed to say why I paid the fine. Then it's up to the jury to decide whether or not they believe it. Here is the instruction. Here is the one sentence in the instruction that's somewhat troublesome. However, in this case, the defendant has presented evidence to excuse or justify his violation. Now, that's not correct, is it? Well, it depends. According to the plaintiff, there was a violation. According to the defendant, there was not. But there was no legal, there was no recognizable legal justification or excuse presented. And Pennsylvania has recognized those excuses in Miller v. Hurst. The restatement has recognized those defenses. And they all generally have to do with meeting an emergency or incapacity or creating a greater risk of harm and so forth. There's no such category as I didn't pay the fine because I couldn't, I didn't have the wherewithal. That's not an excuse. So isn't the jury instruction wrong? Not, no, Your Honor, I don't think it is because the list goes, it says it's not exclusive. And I would agree with you that what was offered by Mr. Austin does not fall under this general category. That's true. The list is not exclusive. But here is the list. The actor didn't know or should not have known of the occasion for compliance. The actor had an incapacity, unable to comply through reasonable diligence, confronted by an emergency like a rock falling down a mountain, a deer running out the road, or create a greater risk by action taken. Where does I couldn't pay the fine fit in those categories? Well, Your Honor, I would admit that it's a stretch. However, the person should be able to offer the excuse of why he didn't pay the fine. One other thing that's troubling here is that he didn't get a ticket for unsafe lane change. I agree with you. I think that's fine. On the stand he could explain why he didn't, why he paid the fine, why he pled guilty. I absolutely agree. But the problem is that the judge said that that's an excuse for his negligence or for pleading guilty to 3309. For paying the fine. Right. Right. Well, is there any argument that this is harmless error? I mean, do you have an argument to that effect? Well, Your Honor, I would go back to the fact that this case, like a lot of other negligence cases, are about he said, she said. And here we actually have a he and a she. Mr. Austin consistently denied that he changed lanes.  Ms. Thompson, on the other hand, wasn't sure what she did. And the record's very clear of that. She knows she was alongside the truck. She doesn't know what happened. She doesn't know where the truck was. And then Mr. Turcotte really didn't see what happened. So the jury decided to assess Mr. Austin's credibility. Well, assume for the sake of my next question that we read that jury instruction and it looks to us like there was no defensive excuse offered. That, in fact, the defense offered was, I didn't do it. And that we're then faced with the question of what to do next. If that's how we read it, would we be bound to send this back? I don't think so. I think the error would be harmless, Your Honor. That's what I'm asking you. And why? What's your argument that this could be a harmless error? Well, because this is a case where, quite frankly, I think it would be difficult for either side that lost to say that the facts completely warranted their side to be right. You had a he said, she said case. You had evidence on both sides. And is a jury entitled to make the decision about who said about what was correct on the basis of an inaccurate jury instruction? No, Your Honor. I think it's more of a factual determination about what happened. I think that's what went on here. I think they listened to the different witnesses, and I think in these kinds of cases the two drivers are usually the most important parts. But is it fair or is it unfair to say that the jury was told that the violation, the unsafe change of lane, was excused or justified? No. I think it was fair to say that it's up to you to decide whether there was a lane change. And the fact that he pled guilty or paid this fine, it's up to you to determine if that's dispositive on the issue or not. And I think that's why the inference that that instruction leads to, I think, was very fair and correct that Judge Kozak gave. I'd just like to couple this argument with another as to the overall fairness of the judge's instructions, and it goes into evidence, so I just want to be able to address this before you all go away. Where did you plead? Where did the defendant plead contributory negligence or even comparative negligence? Is there anywhere in this that the pleading was filed or that there was evidence offered that the plaintiff herself was responsible for this accident? Your Honor, that was included in our answer, obviously, and Judge Kozak decided that, in his opinion, there wasn't evidence of the plaintiff's contributory negligence, and he would not instruct the jury on that issue. I obviously was rather upset about that. Then why did you insist on having the jury hear that she had done a double shift? What was that probative of and relevant to? Well, you know, the happening of accidents are not in a vacuum. I think people need to know what goes on in a person's life as they come up to the accident scene. What were they doing? What was their mindset? What were they thinking of? Were they listening to the radio? Not my question, really. What I mean to go to is where is it that the plaintiff was anything but ambushed by that particular evidence? Did she have an opportunity during depositions and discovery to round up her employees or her coworkers and say she was bright and alert and had five cups of coffee? Absolutely. Why is that an issue? Because the plaintiff has made it an issue that it was a motion that was adversely ruled upon by the court that directly impacted on the evidence. I wanted to know how it's probative of anything. I think it's probative about what was going on in this person's life, just like where did the truck driver – where was the driver coming from? How long had he driven? That's so broad. They can get anything in evidence. The specific question is at the time of the accident, did her double shift contribute to the accident? Is there underlying evidence to suggest that her working two shifts contributed to the accident? That's the implication to me to the juror, isn't it? Well, Your Honor, we went and did not get into – we asked her whether she was alert. I think it's in the record. And she said that she was. And it went to whether or not she was paying attention as she drove down the road. She couldn't tell you where that truck was. She couldn't tell you what the truck was doing. And I think it was very important for the jury to understand what was going on in her mind as she's driving along. Well, maybe she was using a cell phone. Maybe she was reaching on the floor for a piece of candy. But how does working the double shift impact on a juror's consideration? It can't be anything but prejudicial, can it? No, I disagree. It can be a lot of things. It's up for the jury to decide. Then why would you want it if it's not specific? Because just like they wanted the fact that Mr. Austin had only been a truck driver for three days and that this was his first night driving, and that was admitted too. I thought that was prejudicial. But, however, it was admitted. The jury determined and looked at a lot of things. Well, is your argument that it's not being offered to show she was negligent, but it was being offered to show that her perceptions at the scene were not all they could have been and, therefore, her testimony shouldn't be believed? Is that what you just said a minute ago? Well, no. I was offering it for the fact that she might be negligent. I was offered the fact that she was driving in a blind spot, which the Pennsylvania rules in your driver's manual say you can't do. And are you permitted to make that argument if you haven't pled the contributory or comparative negligence? No, I did plead it. It wasn't until the close of evidence when Judge Kozik said, I'm not charging the jury on her contributory negligence. I thought that was wrong, but that was his decision. So I couldn't argue that she caused the accident, and the jury didn't find that. The jury adamantly said that Scott Austin was not negligent. They didn't say that Ms. Thompson was. I mean, there can be an accident happening in a collision where neither side is negligent. Well, they weren't asked to make that decision. Well, that's correct. So we don't know. But the point of the matter is that they decided affirmatively that Mr. Austin was not negligent. Let me ask a question about something your opponent said. I understood her to say, I presented evidence and argument to the district court separate and apart from the payment of a fine that justified the giving of a negligence per se instruction. That, in other words, if the jury believed our version of the facts, and there was an illegal lane change because of what we told them, not because of the payment of a fine or any ticket, that that would be negligence per se. And I was entitled, on behalf of my client, to hear that instruction given to the jury. I want to ask you whether you agree or disagree that that was an argument made to the district court. It wasn't an argument made in district court. Yeah, I'm asking about the state of the record. In other words, you folks have lived with this case. We haven't lived with it the way you have. And the parties certainly have lived with this case. And there's clearly a sense of a desire for justice on both sides. Each side thinking they're right. And that's very natural and very human. Nothing wrong with that at all. I'm just trying to get to the question of what was given to the district court to consider because part of the argument that's being made to us here is, separate and apart from the payment of the ticket, a point on which you can hear we've had a lot of questions, there was another basis for giving the negligence per se instruction, and that was argued to the district court. I want to know whether you think that's accurately reflecting the record or not. I don't recall that. What I specifically recall was all of this about the payment of the fine because, in my opinion, it can be an automatic thing. You pay the fine, so you're automatically guilty. I argue to the jury a very similar fact situation that Judge Fuentes referred to earlier. I mean, just because a person pays a fine, that does not make them automatically negligent because then why do we need juries? So I'm not comfortable saying that that argument was advanced to a level. Ms. Munley may disagree, but my understanding was the fact that it was all about the payment of this fine. All right. Last question, if I may. I'm out of time. Let's assume that this case got sent back on the basis of the jury instruction being inaccurate. So you had another trial ahead of both of you, and it's a he said, she said case, as both of you have acknowledged. Is this a case where the parties have actually sat down and talked to each other about how to deal with this case short of putting the citizens of the state of Pennsylvania through another jury trial? Because you're going to bring jurors in, and you're going to present this evidence again. Your Honor, Ms. Munley and I work together in a lot of cases. We've talked a lot about this case. We work very hard, and I don't know. I think that's something for the respective clients to decide what they want to do, if that was the case, Your Honor. Yeah, I agree. You know, it's a case where it went against the plaintiff, and maybe not strictly on the basis of the jury instruction because the state of the evidence looks like maybe you're right, that regardless of what the jury instruction said, they were looking at who was really negligent and who wasn't. But it might go back on the basis of an error in the jury instruction. That's something that will be talked about, whether that's error or not, but something for the parties to be thinking about. Thank you very much. Thank you, Mr. Stewart. All right, Ms. Munley, you have five minutes. Your Honors, I will try to be brief. With respect to your question, Judge Roof, on the double shift, I believe that that badly prejudiced my case. Mr. Stewart brought out from witnesses at the scene, did Mrs. Thompson tell you she had just come from a double shift? He asked Mrs. Thompson what time she got up, how long she worked as a licensed practical nurse, what time she left, and then what was on her mind when she was traveling home. So I believe that there was no real evidentiary purpose other than to imply that she was somehow falling asleep or asleep or not as alert at the time of the accident. And why would that be an inappropriate inference to ask the jury to draw? Because he wasn't producing any evidence that she was sleepy or that she had any sleep concerns. How about work in a double shift? All by itself, is a jury entitled to draw some inference from the fact that somebody's worked a double, or is that an impermissible inference in and of itself? I believe it's an impermissible inference unless there is proof that the driver was asleep or tired or somehow that was connected to the accident, Your Honor. But countervailing that, you got in evidence that the truck driver only had been driving for three days, and you want the jury to infer from that information that he's inexperienced and therefore he must have caused the accident. Well, I never considered it as like a tit for tat. Well, he got that in, so I lose my argument, Your Honor. But perhaps in a trial judge's discretion in balancing evidence, that's something that we shouldn't touch. Isn't that possible? Well, it seems to have prejudiced me that that evidence was brought in that she worked a double shift since I am standing here before you as the appellant. And the fact that he was a new driver does not seem to have prejudiced him or his case. That's a pretty large assumption, isn't it, to say that that's the reason one side lost and one side didn't? Maybe they just decided they believed him that he didn't make the lane change. Well, Your Honor, as I go back to my original argument on the charge, I believe that the charge was such that it led the jury to be confused and that there was a defense verdict. The trial court was not correct in not refusing to charge on negligence per se. What happens to Ms. Thompson? She had very serious injuries, apparently. She did, Your Honor. And did you put in a case for damages at the same time as the negligence case? Yes, we did, Your Honor. We had physicians, a vocational expert, who all testified about her injuries. That's not part of the record since we lost on liability. Under Pennsylvania law, her medical bills are paid? Actually, her medical bills were unpaid. There was a large enough portion of the bills that were unpaid that were still not paid at the time of the trial, Your Honor. It was an exhibit. It was stipulated to by counsel as to the amount of the unpaid medical bills. Thank you, Your Honors. Ms. Munley, thank you very much. We'll take the case under advisement. We'll recess.